IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

WILDEARTH GUARDIANS,

    Plaintiff,

v.

KEN SALAZAR, in his official capacity as
Secretary, U.S. Department of the Interior,

    Defendant.

## PETITION FOR REVIEW OF AGENCY ACTION[1]

### INTRODUCTION

1.    Plaintiff WildEarth Guardians ("Guardians") brings this action against Defendant, Ken Salazar, U.S. Secretary of the Interior (the "Secretary") in his official capacity. Guardians challenges the Secretary's rejection of its petition to "list," and thereby protect, a very rare beetle, the Narrow-foot Hygrotus Diving Beetle ("Diving Beetle"), *Hygrotus diversipes*, as a threatened or endangered species under the Endangered Species Act ("ESA"). 16 U.S.C. §§ 1531-1544. Guardians alleges that the Secretary's decision to deny its petition violated the ESA and is therefore arbitrary, capricious and contrary to law within the meaning of the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 701-706. To remedy the Secretary's violation of law, Guardians seeks a declaratory judgment that the Secretary's decision violated

---

[1] In keeping with <u>Olenhouse v. Commodity Credit Corp.</u>, 42 F.3d 1560, 1579-1580 (10th Cir. 1994) this initial pleading is captioned as a Petition for Review of Agency Action instead of as a Complaint for Declaratory and Injunctive Relief.

the ESA and APA, and an injunction reversing and remanding the Secretary's decision and directing him to proceed with the ESA listing process for the Diving Beetle.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (U.S. as a defendant), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen suit provision), the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Equal Access to Judgment Act ("EAJA"), 28 U.S.C. § 2412 et seq.

3. This Court has authority to grant Guardians' requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief) and 5 U.S.C. §§ 701-706 (APA).

4. More than 90 days ago, by letter dated February 28, 2009, Guardians furnished the Secretary with written notice of the ESA violations alleged in this Complaint and of its intent to sue. See 16 U.S.C. § 1540(g). The Secretary received notice of this letter on or about March 11, 2009.

5. The Secretary has not remedied his violations of the ESA by reversing his negative finding on Guardians' listing petition. Therefore an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2001.

6. The federal government has waived sovereign immunity in this action pursuant to the ESA, 16 U.S.C. § 1540(g), and the APA, 5 U.S.C. § 702.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e). Both the Secretary and Guardians maintain major offices within this district. The U.S. Fish and Wildlife Service's Regional Office in Lakewood, Colorado, is directly responsible for reviewing Guardians' petition.

**PARTIES**

8.    Plaintiff WILDEARTH GUARDIANS ("Guardians") sues on behalf of itself and its adversely affected members. Guardians is a nonprofit environmental organization dedicated to protecting and restoring wildlife, wild places, and wild rivers in the American West. Guardians has over 4,500 members. Guardians has an active endangered species protection campaign with a national scope. As part of this campaign, Guardians has repeatedly urged the Secretary to list imperiled species, such as the Diving Beetle, as either threatened or endangered species pursuant to the ESA.

9.    Guardians filed the initial petition to list the Diving Beetle on July 24, 2007. Guardians filed a second, separate petition to list the Diving Beetle on an emergency basis on June 12, 2008. Guardians invested significant resources into preparing the initial listing petition, the supplemental emergency listing petition, and pursuing previous litigation to compel the Secretary to respond to these petitions. The Secretary rejected Guardians' emergency listing petition for the Diving Beetle. Guardians' effort to secure judicial review of the Secretary's rejection of its emergency listing petition was unsuccessful. The present lawsuit challenges the Secretary's rejection of Guardians' original July 2007 petition, not the Secretary's rejection of the June 2008 emergency petition.

10.    Guardians' members and staff use and enjoy, and will continue to use and enjoy the Diving Beetle and its habitat for plant and insect viewing and for recreational, aesthetic, and scientific activities. Guardians' members and staff have observed, enjoyed, and attempted to protect and restore habitats inhabited or potentially inhabited by the Diving Beetle. The protection of the Diving Beetle under the ESA and the corresponding legally required designation and protection of its critical habitat and preparation of a recovery plan for the species

would help Guardians and its members and staff in their efforts to protect and conserve endangered species. Guardians and its members have a substantial interest in the conservation of the Diving Beetle and the ecosystem on which it depends for survival. Guardians and its members and staff are adversely affected by the Secretary's rejection of the petition to list the species under the ESA. The requested relief will redress Guardians' and its members' injuries.

11.   Defendant, KEN SALAZAR, is the Secretary of the United States Department of the Interior. As such he has ultimate responsibility for implementation of the ESA. He is sued in his official capacity. In this case, the Secretary has delegated his responsibilities under the ESA to the U.S. Fish and Wildlife Service ("FWS"), an agency within the U.S. Department of the Interior.

## STATUTORY FRAMEWORK OF THE ENDANGERED SPECIES ACT

12.   The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered and threatened species …." 16 U.S.C. § 1531(b). The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." 16 U.S.C. § 1532(3). Accordingly, the ultimate goal of the ESA is not only to temporarily save endangered and threatened species from extinction but also to recover these species to the point where they are no longer in danger of extinction and no longer need ESA protection.

13.   However, the protective provisions of the ESA do not do anything to conserve a species until that species is officially "listed" as either threatened or endangered under the terms of the Act. See 16 U.S.C. § 1533.

14. A species is listed as "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is listed as "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(16).

15. The Secretary is required to list as either threatened or endangered any species facing extinction due to any one, or any combination of, the following five factors:

    A. the present or threatened destruction, modification, or curtailment of the species' habitat or range;

    B. overutilization for commercial, recreational, scientific, or educational purposes;

    C. disease or predation;

    D. the inadequacy of existing regulatory mechanisms; or

    E. other natural or manmade factors affecting the species' continued existence.

16 U.S.C. § 1533(a)(1)(A)-(E).

16. The Secretary's decision whether to list a species is limited solely to consideration of these five factors. In considering these factors, the Secretary must use only "the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." 50 C.F.R. § 424.11(b).

17. Once a species is listed, the ESA provides strong legal protection to encourage the species' recovery. The ESA generally requires the Secretary to designate critical habitat for all threatened and endangered species concurrently with their listing and subsequently develop recovery plans for such species. See 16 U.S.C. § 1533(a)(3) and (f). The ESA also requires that

all federal agencies "carry out programs for the conservation" of threatened and endangered species and consult with the Secretary in order to ensure that their actions are "not likely to jeopardize the continued existence" of such species or "result in the destruction or adverse modification" of their critical habitat. 16 U.S.C. § 1536(a)(1) and (2). Additionally, the ESA prohibits any person from "taking" a threatened or endangered species. 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. §§ 17.21 and 17.31. To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

18.     The degree of protection that the Secretary provides a listed species depends on whether the species is listed as "threatened" or "endangered." Threatened species may receive less protection under the ESA than endangered species. For example, Section 4(d) of the ESA authorizes the Secretary to promulgate special regulations ("4(d) Rules") affecting the protections afforded threatened species. See 16 U.S.C. § 1533(d); 50 C.F.R. §§ 17.31(a) and (c). The Secretary may use a special 4(d) Rule to allow otherwise illegal take of threatened species.

19.     Any interested person may file a petition with the Secretary to list, uplist (from threatened to endangered), downlist (from endangered to threatened), or delist a species under the ESA. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b).

20.     Upon receiving a listing petition, the Secretary must, "to the maximum extent practicable," determine within 90 days whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). "Substantial information" is that "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b). This initial determination is known as a "90-day finding."

21. The Secretary's initial 90-day review of a listing petition is not exhaustive and is limited to a determination of whether the petition meets the "substantial information" threshold. At the 90-day finding, the Secretary accepts the petitioner's sources and characterizations of the information unless he has specific information to the contrary.

22. If the Secretary makes a positive 90-day finding, then the Secretary must commence a thorough status review of the species. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(3). After the status review the Secretary must determine whether the petitioned action is warranted, not warranted, or warranted but presently precluded by other more important listing actions. See 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(b).

23. If the Secretary finds that listing is warranted, he must publish a proposed listing regulation in the Federal Register. See 16 U.S.C. § 1533(b)(3)(B)(ii). Within one year of this publication, the Secretary is required to render a final determination on the proposal. See 16 U.S.C. § 1533(b)(6)(A). At such time, the Secretary must either list the species, withdraw the proposal, or if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit more scientific information. See 16 U.S.C. §§ 1533(b)(6)(A)(1)(III) and (b)(6)(B)(i).

24. The ESA expressly provides that a negative 90-day finding may be challenged in federal court. See 16 U.S.C. § 1533(b)(3)(C)(ii)

## STATEMENT OF FACTS

**I.      The Diving Beetle (*Hygrotus diversipes*)**

25. The Narrow-foot hygrotus diving beetle, *Hygrotus diversipes*, is moderately large (about 4.5mm in length), oval in shape, with a pale yellowish color on its back and black on its abdomen. The Diving Beetle is scientifically classified as an insect in the order *Coleoptera*,

genus *Hygrotus,* and species *diversipes*. Beetles are one of the oldest groups of insects, dating back to the Lower Permian period, about 265 million years ago. The Diving Beetle is shown here.[2]



26.   The Diving Beetle has two major stages: larva and adult. As a larva, the Diving Beetle is sometimes called the "water tiger" because of its immense appetite. Its prey includes other insect larvae and crustaceans. The larvae's bodies are crescent-shaped with a long tail and flat square-shaped head. When hunting, they cling to grasses or debris along the bottom of the creek and wait until their prey pass by, at which point they grab them and bite down with pincers. When the larvae are ready to transition to adulthood, they crawl out of the water and bury themselves in mud for pupation. Adults emerge in the warmer months.

27.   The species was first described by Hugh Leech in 1966 from nineteen specimens collected from the type locality at Dugout Creek, 8.5 miles northwest of Natrona County, Wyoming. Leech discovered the beetle at this location on July 27, 1964. The most recent survey of the species was undertaken in August 2002 by Dr. Kelly B. Miller. Miller's research showed the known range of the Diving Beetle to include the Wyoming counties of Natrona, Johnson, and Fremont. The Diving Beetle is now known from two major drainages—the Powder River (South and Middle Forks, Salt Creek and the main Powder River drainage farther north) and the Wind River (Muskrat Creek and Poison Creek drainages).

28.   The Diving Beetle appears to occur exclusively in small, mineralized pools in gulches where there is often a white crust of salt along the edges of the water. These gulches are

---

[2] Photo of Diving Beetle by Dr. Kelly B. Miller.

intermittently flowing and often entirely flooded. Substrates in these sites are generally clay with some larger gravel. The type locality of the Diving Beetle—Dugout Creek—becomes a series of disconnected pools in a clay and gravel bed in mid summer. Although the water is highly mineralized, it is still fresh enough to support fish and other beetle species. The Diving Beetle appears to require pools that have species of sedge or some plant debris.

29.     The Diving Beetle is genuinely rare. Because of its relatively restricted habitat and geography, it is particularly susceptible to habitat disturbances resulting from extreme weather patterns, water scarcity, and anthropogenic activities. The small pools in which the Diving Beetle is found are vulnerable to extreme weather patterns that cause drought or flooding. Water is scarce in the parts of Wyoming where the Diving Beetle is known to occur because most streams are damned or diverted for stock ponds or other uses. Other anthropogenic threats to the Diving Beetle and its habitat include nearby mineral exploration and extraction. The species' type locality has been affected by a carbon dioxide pipeline and methane development. Moreover, the construction of power lines and a major highway have also disturbed the Diving Beetle's habitat. As a result of all of these threats, the natural pool habitat for the Diving Beetle is in decline.

## II.     NatureServe

30.     NatureServe is a non-profit organization. Its mission is to provide a scientific basis for effective conservation action. NatureServe is comprised of a network of over 80 Natural Heritage Programs and conservation data centers throughout all 50 States, Latin America, and the Caribbean. It compiles the work of nearly 1,000 scientists and has an annual budget of approximately 45 million dollars.

31.     NatureServe maintains an online encyclopedia, called NatureServe Explorer. NatureServe Explorer maintains the best available scientific information on approximately 50,000 plants, animals, and ecological communities in the United States and Canada. The Secretary has referred to NatureServe Explorer as an authoritative source for conservation information on thousands of species. The Secretary has also acknowledged that NatureServe Explorer provides in-depth information on rare and endangered species. The Secretary relies on NatureServe's system, ranking species by their degree of imperilment, in his own efforts to rank species within the U.S Fish and Wildlife Service's ("FWS") listing priority number system.

32.     NatureServe ranks species by their degree of imperilment. The highest possible rank, indicating the highest degree of imperilment, is G1. A G1 ranking indicates a full species is critically imperiled and is at very high risk of extinction due to extreme rarity (often 5 or fewer populations), very steep population declines, or other factors. A G2 ranking indicates that a species is imperiled and is at a high risk of extinction due to very restricted range, very few populations, steep declines, or other factors. Some taxa are classified as G1G2 because there is uncertainty about their status. A G1G2 rank would indicate that the species may be either G1 or G2, and other ranks would be far less accurate. NatureServe ranks the Diving Beetle as G1G2 to indicate such uncertainty about its status, but NatureServe considers the species' rounded status to be G1.

### III.     Guardians' Efforts to Protect the Diving Beetle and the Secretary's Actions

33.     On or about July 24, 2007, Guardians petitioned the Secretary to list as threatened or endangered under the ESA all species ranked as G1 (critically imperiled) or G1G2 (critically imperiled or imperiled) by NatureServe in FWS' Mountain Prairie Region. Guardians excluded from its request sub-species and species already listed, or identified as candidates for listing, by

10

the Secretary. Guardians' hope was that the Secretary could use the substantial expertise and previous efforts used to compile the NatureServe list of critically imperiled species to properly expand the Secretary's own list of threatened and endangered species. Through its petition, Guardians sought to make the process of listing species under the ESA more efficient and quicker by taking advantage of existing resources, such as the NatureServe Explorer database, and to avoid duplicating the efforts of others. Accordingly, Guardians incorporated by reference into its petition all analyses, references, and documentation provided by NatureServe. The Diving Beetle was one of the species included in Guardians' July 2007 listing petition.

34.     On or about August 24, 2007, the Secretary responded to Guardians' petition and noted that the petition incorporated all analyses, references, and documentation provided by NatureServe in its online database.

35.     On or about November 8, 2007, Guardians sent the Secretary a notice letter indicating that it would file suit to force the Secretary to make an initial 90-day finding on Guardians' petition. In a letter dated January 10, 2008, the Secretary responded to Guardians' notice with the statement "We must review the literature available in the NatureServe database for each of the 206 species individually."

36.     When the Secretary failed to adequately respond to Guardians' notice letter, Guardians filed suit in federal court on March 19, 2008.

37.     On or about June 12, 2008, Guardians filed a second petition, captioned as an emergency listing petition, for 32 species. Of all of the critically imperiled G1 or G1G2 species previously petitioned by Guardians, the 32 species in the emergency listing petition were the species Guardians believed were most in danger of immediate extinction because they had either only a single known, or no known, populations. The Diving Beetle was listed in the emergency

petition because it was believed to occur at only one site and was at risk of total extirpation. In the emergency listing petition Guardians also indicated that if the Secretary did not believe that emergency listing of these species was appropriate, he should consider the information provided in the emergency listing petition as supplemental to Guardians prior July 2007 petition.

38. With respect to the Diving Beetle, Guardians' emergency listing petition stated:

> ***Hygrotus diversipes*** is a beetle known to occur at a single site in the wild; a creek in Natrona County, Wyoming. Its global short-term trend is very rapidly to rapidly declining, which represents a decline of 30-70%. Given its restriction to one site, it is vulnerable to total extirpation. This species is found only in Wyoming. The Wyoming Comprehensive Wildlife Conservation Strategy does not include insects.

Guardians' petition also provided a copy of the entire NatureServe individual account for the Diving Beetle.

39. On or about July 25, 2008, the Secretary denied Guardians' emergency listing petition for the Diving Beetle.

40. Subsequently, on February 5, 2009, the Secretary denied Guardians' original July 2007 petition for the Diving Beetle. 74 Fed. Reg. 6122-6128 (February 5, 2009). In this decision, the Secretary used a classification scheme for the information provided in the petition to explain the rationale for the numerous negative 90-day findings made in the same document. The Secretary denied listing of the Diving Beetle based on Category A. Category A indicates that the Secretary determined the petition and the NatureServe database:

> has only minimal information about each species, and in some cases no more information than the name of the species...Occasionally, generic information was presented in the NatureServe species files for a larger group of species, such as for the class or family the species belongs to, but not specific information on the individual species. The references were taxonomic in nature or simply checklists of keys (which provide anatomical characteristics for identification of species) and did not address threats to the species.

74 Fed. Reg. 6122 at 6124.

41. The Secretary's rationale for his 90-day finding on Guardians' petition as to the Diving Beetle is factually incorrect. Contrary to the Secretary's description of a species assigned to Category A, Guardians provided the Secretary with specific taxonomic information on the individual species and a description of its habitat. Furthermore, Guardians addressed the status of the population—that it was known to occur at a single site in Natrona County, Wyoming. Guardians also presented NatureServe's assessment that the species was very rapidly to rapidly declining at a rate of 30 percent to 70 percent. As to the Secretary's contention that the petition did not address threats to the species, Guardians explained that the species was in danger of extinction simply because it had only a single known population and was thus vulnerable to systematic pressures or random events. Guardian's emergency petition also presented information regarding the "inadequacy of existing regulatory mechanisms" as a threat to the Diving Beetle. The species was a Category-2 candidate for ESA listing from 1989-1996, but the Secretary removed it from consideration in 1996. On a state level, the Wyoming Comprehensive Wildlife Conservation Strategy does not cover insects, so the species receives no protection from the only state in which it is known to occur.

42. The Secretary's decision that the Diving Beetle is not threatened simply because it occurs at only a single known location is inconsistent with other decisions and positions taken by the Secretary. For each of the following species, the Secretary has determined that the species' low numbers or the low number of populations of the species is a threat to the species' continued existence, making its listing under the ESA warranted: *Partula langfordi*; *Myrsine mezii*; *Megalagrion nesiotes*; *Tryonia circumstriata*; *Ostodes strigatus*; *Doryopteris takeuchii*; *Melicope degeneri*; *Huperzia stemmermanniae*; *Peperomia subpetiolata*; *Melicope hiiakae*; *Phyllostegia bracteata*; *Noturus crypticus*; *Pyrgulopsis chupaderae*; *Leavenworthia texana*;

*Ptychobranchus jonesi*; *Phacelia stellaris*; *Drosophila attigua*; *Villosa fabilis*; *Partulina semicarinata*; *Newcombia cumingi*; *Platydesma remyi*; and *Megalagrion leptodemas*.

43. The Secretary's decision to issue a negative 90-day finding on the Diving Beetle even though the best available scientific information indicated the species had a single known population existing in a very unstable habitat is inconsistent with the Secretary's most recent decision to issue a positive 90-day finding for the Tehachapi slender salamander. The Secretary issued a positive 90-day finding for the Tehachapi slender salamander, in part, because the species has only two known populations and thus is vulnerable to extinction by stochastic events. See 74 Fed. Reg. 18340-41 (April 22, 2009).

44. Because the Secretary's decision to issue a negative 90-day finding for the Diving Beetle is neither supported by the facts in the record before the agency, nor consistent with positions the Secretary has taken for dozens of other species, Guardians has brought this litigation.

45. Though unknown to both Guardians and the Secretary during the above process of petition review—and thus outside the administrative record for this case—Guardians has subsequently discovered research indicating that the Diving Beetle has been found at 11 individual sites. The known range of the Diving Beetle now includes Natrona, Johnson, and Fremont Counties in Wyoming. The greatest distance between individual sites is about 126 miles. Guardians still considers the species to be in peril, given the Diving Beetle's limited number of population sites and its concentration in a relatively small geographical area in the state of Wyoming. The Secretary should evaluate this new information if this Court remands the petition for further action consistent with this Court's order.

**CLAIM FOR RELIEF**

46. The allegations of all preceding paragraphs of this Complaint are incorporated herein by reference.

47. The Secretary's 90-day finding that Guardians' ESA listing petition did not present evidence that would lead a reasonable person to believe that the listing of the Narrow-foot hygrotus diving beetle as threatened or endangered may be warranted: failed to use the best available science; relied on an improper evidentiary standard; failed to consider significant threats to the Narrow-foot hygrotus diving beetle addressed in the petition; failed to articulate a rational connection between the facts found and its conclusion; and is otherwise arbitrary, capricious, and contrary to law in violation of the ESA within the meaning of the APA. 16 U.S.C. § 1533(b); 5 U.S.C. §§ 701-706.

**PRAYER FOR RELIEF**

WHEREFORE, Guardians requests that this Court enter judgment providing the following relief:

(A) A declaration that the Secretary violated the ESA and APA by issuing an unlawful 90-day finding on Guardians' petition to list the Narrow-foot hygrotus diving beetle, (*Hygrotus diversipes*) as a threatened or an endangered species;

(B) An injunctive order requiring the Secretary to withdraw his unlawful 90-day finding and issue a new finding by a date certain;

(C) An order awarding Guardians its costs of litigation including reasonable attorneys' fees as provided by the ESA, 16 U.S.C. § 1540(g), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(D) Such other further relief as the Court deems just and proper.

Dated this 5th day of January, 2010.

                Respectfully Submitted,

                <u>/s/ Samantha Ruscavage-Barz</u>
                Samantha Ruscavage-Barz, (NM Bar No. 23276)
                17 Orno Creek Road
                Placitas, NM 87043
                Tel: 505-750-1598
                E-Mail: Samantha.RuscavageBarz@gmail.com

                *Attorney for Plaintiff WildEarth Guardians*