IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action **No. 10-cv-00011-AP**

**WILDEARTH GUARDIANS,**

    Plaintiff,

v.

**KEN SALAZAR, in his official capacity as Secretary, U.S. Department of the Interior,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

Kane, J.

    The Narrow-foot Hygrotus Beetle ("Diving Beetle"), *Hygrotus diversipes*, is exclusively found in riparian ecosystems in central Wyoming. Although the Diving Beetle's provenance is unclear, it is a member of the order *Coleoptera*, which traces its origins to the Lower Permian period nearly 265 million years ago. Notably, species of this order have survived three of the Earth's five major extinction events: the Permian-Triassic, the Triassic-Jurassic, and the Cretaceous-Tertiary, but they are not invulnerable. Because of the Diving Beetle's limited geographic distribution and specific habitat requirements, the prospect of habitat destruction threatens its very existence.

    Because of these perceived threats, Plaintiff WildEarth Guardians petitioned the Secretary of the Interior in July 2007, requesting that he list the Diving Beetle as either threatened or

endangered pursuant to his authority under the Endangered Species Act.[1] The Secretary failed to act, and, after providing the requisite notice, WildEarth Guardians filed suit to compel the Secretary to make the required 90-day finding.[2] Soon after, because it feared that the Diving Beetle faced imminent extinction, WildEarth Guardians filed a second petition on an emergency basis. The Secretary denied the emergency listing petition, and on February 5, 2009 issued the required 90-day finding, denying the original July 2007 petition.

Alleging that the Secretary's decision is arbitrary, capricious, and contrary to law in violation of the Endangered Species Act, and seeking declaratory and injunctive relief, *see* 16 U.S.C. § 1533(b); 5 U.S.C. §§ 701-706, WildEarth Guardians filed the instant suit challenging the Secretary's denial of the July 2007 listing petition.

After filing his Answer, the Secretary sought, and I denied as premature, leave to conduct discovery relating to WildEarth Guardians' standing to bring suit. Plaintiff then filed its opening brief on the merits, accompanied by the declaration of James J. Tutchton, WildEarth Guardians' in-house counsel and standing declarant. The Secretary then filed a Motion to Dismiss WildEarth Guardians' claim pursuant to Fed. R. Civ. P. 12(b)(1) and renewed his Motion for Leave to Take Jurisdictional Discovery. Finding that the Secretary had adequately established the propriety of discovery, I granted his motion and permitted him to conduct discovery limited to topics relating

---

[1] WildEarth Guardians' petition to list the Diving Beetle was part of a larger, 206-species petition filed in the Fish and Wildlife Service's Mountain-Prairie Region on July 24, 2007. Just over a month before that filing, WildEarth Guardians filed a 475-species petition in the Fish and Wildlife Service's Southwestern Region. For more background on these petitions, see *WildEarth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 21-22 (D.D.C. 2008).

[2] After a party has petitioned the Secretary of the Interior to list a species as threatened or endangered under the Endangered Species Act, the Secretary has ninety days "to make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A).

to standing.  I also stayed briefing on his Motion to Dismiss pending completion of discovery.

The Secretary has completed discovery, and the parties have briefed the Motion to Dismiss.  Having reviewed the parties' arguments and the relevant law, I find that Plaintiff has failed to establish its standing to challenge the Secretary's denial of its July 2007 petition to list the Diving Beetle.  Accordingly, Defendant's Motion is GRANTED, and Plaintiff's petition for relief is DISMISSED.

## Nature of Review

As an initial matter, it is important to clarify the nature of these proceedings.  Plaintiff challenges the Secretary's failure to list the Diving Beetle pursuant to the requirements of the Endangered Species Act.  Because this statute fails to define or specify the standard of review to be used in examining the Secretary's actions, the Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq.*, governs.  In determining the merits of Plaintiff's challenge, I limit my review to the evidence relied upon by the Secretary in reaching the challenged decision.  *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).   Motions for summary judgment, which "permit[] the issues on appeal to be defined by the appellee and invite[] the reviewing court to rely on evidence outside the administrative record," are impermissible  *Id.* at 1579-80.

In contrast, motions to dismiss for lack of jurisdiction, which implicate issues of justiciability, do not raise these same concerns.  Because the issues and jurisdictional facts implicated by the Secretary's Motion to Dismiss are independent from the merits of Plaintiff's appeal, the motion does not impermissibly alter the appellate framework and my review is governed by Federal Rule of Civil Procedure 12(b)(1).  Accordingly, I consider affidavits and

other documents submitted by the parties in support of their jurisdictional arguments. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Having determined the nature of my review, I now turn to the merits of the parties' arguments.

## Analysis

The Secretary argues that WildEarth Guardians lacks standing to challenge his decision that the Diving Beetle did not warrant protections under the Endangered Species Act. Because WildEarth Guardians shoulders the burden of establishing standing throughout the course of litigation, *Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1484-85 (10th Cir. 1995), the Secretary argues this alleged failure is fatal to WildEarth Guardians' challenge and requires dismissal.

An organization, to establish standing to sue, must demonstrate that: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 n.3 (10th Cir. 1996). The second and third elements are readily established in this case. My analysis focuses on whether James Jay Tutchton, a member of the organization and WildEarth Guardians' standing declarant, has standing to sue the Secretary in his individual capacity.

### *Standing*

In order to bring suit in a federal court, a plaintiff must have a legal right to judicial enforcement of an asserted legal duty, i.e., standing. Although the requirement has been variously attributed to the "Case or Controversy" Clause of the Constitution, *see, e.g.*, *Sprint*

*Commc'ns Co. v. APCC Servs.*, 554 U.S. 269, 273 (2008) (citing U.S. Const. art. III, § 2, cl. 1), and the principle of separation of powers inherent in the Constitution's delegation of specific powers to the legislative, executive, and judicial branches of our government, *see, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 97, the term "standing" is conspicuously absent from the Constitution or the records of the several conventions.  Some have posited that the standing requirement is implied from the common law as it existed at the time of the Constitution's drafting, *see Coleman v. Miller*, 307 U.S. 433, 460 (1939) (Frankfurter, J., dissenting), but the validity of this assertion has been cast into doubt.  *See* Raoul Berger, *Standing to Sue in Public Actions: Is it a Constitutional Requirement?*, 78 Yale L. J. 816 (1969).  Nevertheless, the standing requirement is universally accepted and I am bound to apply it in this case.

The Supreme Court has employed a variety of tests in enforcing the standing requirement, but the current standing inquiry has been "reduced to a constitutional minimum of . . . three elements."[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As articulated by Justice Scalia :

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (quotations and alterations omitted).  Although straightforward, these requirements have

---

[3]  For a discussion of the constitutional origins of the standing requirement, compare William Fletcher, *The Structure of Standing*, 98 Yale L.J. 221 (1988), with Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers,* 17 Suffolk U. L. Rev.  881 (1983).

defied consistent and predictable application.

Since the Court announced the "injury in fact" requirement in its landmark holding in *Sierra Club v. Morton*, 405 U.S. 727 (1972), it has alternated between an expansive and restrictive approach to standing. *Compare United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973), *with Lujan*, 504 U.S. 555, *and Friends of the Earth, Inc. v. Laidlaw Envtl. Svc., Inc.*, 528 U.S. 167 (2000). Recent opinions reflect even more variations in the Court's standing jurisprudence. *Compare Massachusetts v. U.S. Envtl. Prot. Agency*, 549 U.S. 497 (2008) (holding that a litigant vested with a procedural right can assert that right "without meeting all the normal standards for redressability and immediacy"); *with Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) (denying standing and reinforcing that "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing"); *see also* Christopher Warshaw and Gregory E. Wannier, *Business as Usual? Analyzing the Development of Environmental Standing Doctrine Since 1976*, 5 Harv. L. & Pol'y Rev. 289, 292-98 (2011). The resulting confusion has drawn strong academic and judicial criticism.[4]

The vacillation between expansive and limiting applications of standing, often without discernible reason or justification, has significant theoretical results. *See, e.g.*, Gene R. Nichol, *Rethinking Standing*, 72 Calif. Law Rev. 68 (1984). On a practical level, these decisions have

---

[4] As Professor Joseph Vining has noted, it is impossible to read the Supreme Court's standing decisions "without coming away with a sense of intellectual crisis. Judicial behavior is erratic, even bizarre. The opinions and justifications do not illuminate." Joseph Vining, Legal Identity 1 (1978). The Court itself has observed: "We need not mince words when we say that the concept of Art. III standing has not been defined with complete consistency in all of the various cases decided by this Court." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475 (1982).

failed to provide meaningful guidance to lower courts, compounding the unpredictability of their standing decisions.

In some contexts, most notably environmental law, the party with the most significant stake in the controversy, the organization that has actually participated in the rulemaking process, lacks independent standing to seek judicial relief. *See Sierra Club v. Morton*, 405 U.S. at 731. Instead of ensuring that parties have "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy," Scalia, *supra* n.3, at 882 (quoting and adopting the Supreme Court's formulation of standing in *Sierra Club v. Morton*, 405 U.S. at 731), the modern conception of standing forces many environmental plaintiffs to rely upon the "discrete injury" suffered by one of its members, a party with at best a derivative stake in the controversy, to establish their standing. *See* Cassandra Barnum, *Article: Injury in Fact, Then and Now (and Never Again): Summers v. Earth Island Institute and the Need for Change in Environmental Standing Law*, 17 Mo. Envtl. L. & Pol'y Rev. 1, 58 (2009).

Notwithstanding these very real concerns, however, I must analyze WildEarth Guardians' standing through this familiar lens.

*Injury in Fact*

In order to establish "injury in fact," WildEarth Guardians must show that Mr. Tutchton has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). In his standing declaration, Mr. Tutchton alleges:

> the Secretary's refusal to convey what I believe is deserved legal protection to the Narrow-foot Hygrotus Diving Beetle harms me because the potential loss of this unique species from the creeks of eastern and central Wyoming and its current

precarious status there, harms my use and enjoyment of the area.[5]

Declaration of James J. Tutchton (doc. 23-1) at 6. That Mr. Tuchton's alleged injury is concrete and particularized is beyond contention. Contrary to the Secretary's argument, Mr. Tutchton need not allege that he has actually seen a Diving Beetle[6] or that the Diving Beetle is in some way essential to his personal or professional well-being. He need only establish that his enjoyment of the area is in some way dependent upon the continued existence of the Diving Beetle. *See, e.g.*, *Lujan*, 504 U.S. at 561 (acknowledging that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing"); *see also Pub. Int. Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 71 (3d Cir. 1990) (Even "an identifiable trifle" constitutes sufficient injury for standing purposes). His declaration easily meets this standard, but this does not end the inquiry. Mr. Tutchton must also show that he is actually "among the injured," that is to say, his alleged injury must be "actual or imminent" not merely "conjectural or hypothetical." *Id.* at 562.

Much of the confusion over the Supreme Court's standing jurisprudence arises from the

---

[5] Mr. Tutchton also alleges that "the potential extinction of the Narrow-foot Hygrotus Diving Beetle, due to the current lack of effective legal protection, harms [him] personally because it represents a loss of biodiversity." Declaration of James J. Tutchton (doc. 23-1) at 5-6. Although I acknowledge that this psychic injury may in fact cause Mr. Tutchton some degree of harm, the Supreme Court has considered and dismissed similar injuries as insufficient for purposes of the standing inquiry. *See Lujan*, 504 U.S. at 565.

[6] By definition, a species worthy of consideration for listing under the Endangered Species Act is limited in number and distribution, thus it is unsurprising that Mr. Tutchton has not observed the Diving Beetle. A requirement that a party have actually observed a species potentially worthy of listing under the Endangered Species Act would be overtly antagonistic to the statutory scheme. *See S.W. Ctr. for Biological Diversity v. Clark*, 90 F. Supp. 2d 1300, 1307 (D.N.M. 1999).

determination of whether a party's alleged injury is "actual or imminent." This confusion is not, however, surprising. Although it is easy to objectify the determination of whether a party's alleged injury is "concrete and particularized," whether that injury is "actual or imminent" is highly subjective, requiring courts to engage in a case-by-case inquiry. The subjective nature of this inquiry renders any attempt to formulate an easily articulable, broadly applicable standard extremely difficult, if not impossible, and of doubtful utility. Nevertheless, it is possible to discern a consistent analytical framework from the Court's recent standing jurisprudence that lends some degree of predictability to this determination. This framework is revealed by an examination of the Supreme Court's discussion of standing in two recent cases: *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.* and *Summers v. Earth Island Institute*.

These cases reveal two distinct approaches to determining whether an injury is "actual or imminent." In *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, *Inc.*, the Court focused on the fact that the Plaintiffs' member affiants lived in close proximity to the affected area. 528 U.S. 167, 183-84 (2000). Notably, the Court did not require the member affiants to show any concrete plans to actually use the affected area.[7] Instead, the Court accepted and found sufficient the member affiants' representations that, but for the alleged injury, they would use the area. *Id*. As Justice Ginsburg stated, "the affiant members' reasonable concerns about the effects of [the alleged harm], directly affected those affiants' recreational, aesthetic, and economic interests." *Id*.

In contrast *Summers v. Earth Island Institute* focuses on the lack of "any firm intention to

---

[7] Indeed, the Court's holding recognizes the fact that, in many cases, environmental harm renders an injured parties' desired use impossible or impractical.

visit" the area affected by the alleged harm in denying Respondent-Plaintiff's standing to maintain suit. 129 S. Ct. 1142, 1150. Specifically, the court found insufficient the member affiant's assertion that he "want[ed] to" go to the affected area. *Id.* Reviving an oft-quoted passage from *Lujan*, Justice Scalia reaffirmed that "[s]uch 'some day' intentions – without any description of concrete plans or indeed any specification of *when* the some day will be – do not support a finding of 'actual or imminent' injury that our cases require." *Id*. at 1151 (quoting *Lujan*, 504 U.S. at 564).

Despite the apparent inconsistency, a careful consideration of these rulings reveals that they reflect two ends of a common spectrum. Where a party demonstrates repeated past usage of the affected area, either by his proximity to the affected area or repeated, habitual, even if infrequent, visits, the likelihood that he will return is readily established by reference to his plans to continue past usage. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1284-85 (10th Cir. 2004) (finding a party had standing where she had established repeated past usage of the bus system and testified that she would continue to use the routes "several times per year"). A party need not demonstrate "concrete plans" to return. In contrast, where a party does not live in the immediate vicinity of the affected area and has only demonstrated a sporadic history of past visits, he must establish his intention to return with more specificity. In essence, if not in name, these standards allow courts a means of objectifying what is otherwise an inherently subjective determination – the credibility of the affiant.

This approach is not groundbreaking. Soon after Justice Scalia decreed the standard by which constitutional standing is judged, the Tenth Circuit summarized the means by which a party may demonstrate that its alleged injury is "actual or imminent," stating that a party "must

establish either its 'geographical nexus' to, or actual use of the site where the agency will take or has taken action such that it may be expected to suffer the environmental consequences of the action." *Comm. to Save the Rio Hondo*, 102 F.3d at 449. Although this statement of the law is accurate, its presentation of the determination as an either/or proposition is an unnecessary and misleading oversimplification. The determination of whether a party has sufficiently alleged an "actual or imminent" injury is best conceived along a continuum. Such a conception acknowledges that reviewing courts possess significant flexibility in their consideration of the facts and circumstances of each case in determining whether a plaintiff has met his burden.[8]

---

[8] This formulation merely relates the status quo of standing jurisprudence as it is being applied by most courts. Courts routinely find standing without requiring concrete future plans where parties demonstrate that they live in the vicinity of the affected area. *See Committee to Save the Rio Hondo*, 102 F.3d at 450 (finding standing where parties "live[d] immediately downstream from and share the same watershed with the [affected area]"); *San Juan Citizens Alliance v. Salazar*, 2009 WL 824410, 2009 U.S. Dist. LEXIS 29804 (D. Colo. Mar. 30, 2009) (finding standing where members lived within the boundaries of the affected area); *Vt. Pub. Interest Research Grp. v. U.S. Fish & Wildlife Serv.*, 247 F. Supp. 2d 495, 509 (finding standing where parties lived in the watershed of the affected area and used the watershed downstream from the affected area); *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 1999 WL 34797509, 1999 U.S. Dist. LEXIS 20735 (D.N.M. Dec. 22, 1999) rev'd on other grounds, 248 F.3d 1277 (10th Cir. 2001) (finding standing where member lived, worked, and spent substantial time in the area inhabited by the species at issue); *S.W. Ctr. for Biological Diversity v. Clark*, 90 F. Supp. 2d 1300, 1309 (D.N.M. 1999) (finding standing where member "lives, works and spends substantial time in the immediate area where the [species at issue] are known to exist"). Likewise, lower courts routinely find standing without proof of concrete future plans where a party habitually recreates in the affected area. *See Coal. for a Sustainable Delta v. McCamman*, 725 F. Supp. 2d 1162, 1187-92 (E.D. Cal. 2010) (finding standing where the member had visited the area more than 200 times and had stated plans to return to the area); *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1144 (9th Cir. 2001) (finding standing where a member had swam in the affected waterway "at least a dozen times" and is less likely to continue swimming there because of his belief that the waterway is polluted); and *Wy. Farm Bureau Fed'n v. Babbitt*, 987 F. Supp. 1349, 1357 (D. Wy. 1997) *rev'd on other grounds* 199 F.3d 1224 (10th Cir. 2000) (finding standing where a member habitually visited the affected area, including yearly Thanksgiving trips). Where, however, parties only sporadically visit an area, courts require a more concrete showing of future plans. *See, e.g.*, *S. Utah Wildneress Alliance. v. Sierra*, 2010 WL 4782976, 2010 U.S. Dist. LEXIS 121731 (D. Utah Nov. 15, 2010) (finding Plaintiff failed to

With this framework in mind, I now turn to the facts of this case.

Mr. Tutchton does not live in the immediate vicinity of the Diving Beetle's habitat; his home in Centennial, Colorado is over 200 miles from the closest portion of the beetle's known range. According to his declaration, however, Mr. Tutchton has "recreated and worked in eastern and central Wyoming . . . on numerous occasions." Declaration of James J. Tutchton (doc. 21-1) at ¶15. This includes a brief period of time during which he worked as a ranch hand, numerous hunting and fishing expeditions from approximately 1975 to 2005, and frequent work trips from the mid-1990s until the early 2000s. In 2005, however, owing to various personal reasons, his visits to the area abruptly stopped. Second Declaration of James J. Tutchton (doc. 56-1) at ¶¶ 4-6. This history of usage does not establish a repeated, habitual pattern of visits. Thus, in order to establish standing, Mr. Tutchton must specifically plead concrete plans to return to the area. This he has not done.

Although in his declaration he affirmed that he had specific plans to return to the Diving Beetle's habitat in either the Spring or Summer of 2011, depending upon weather conditions and his children's schedules, Mr. Tutchton did not provide any concrete evidence of those plans.[9] I recognize that requiring a party to specifically demonstrate concrete plans to visit an affected area often reduces standing to a pleading formality, *Lujan*, 504 U.S. at 592 (Blackmun, J., dissenting); it is, nonetheless, a formality which must be acknowledged and adhered to.[10]

---

establish standing because members had only previously visited area one to two times and only stated vague intentions to return to the affected area).

[9] As it turns out, those "specific plans" never came to fruition. Second Declaration of James J. Tutchton (doc. 56-1) at ¶10.

[10] The absurdity of this inquiry is not lost on me. Had Mr. Tutchton affirmed that he had made hotel reservations or purchased plane tickets, he would have adequately established "injury in

Mr. Tutchton has failed to demonstrate an "actual or imminent" injury.[11] Accordingly neither he nor WildEarth Guardians' have standing to challenge the Secretary's denial of the July 2007 listing petition.

**Conclusion**

Because Plaintiff's WildEarth Guardians' standing declarant, James J. Tutchton, has failed to demonstrate that he has suffered an "injury in fact" as a result of the Secretary of the Interior's denial of the petition to list the Narrow-foot Hygrotus Beetle as threatened or endangered, WildEarth Guardians lacks standing to maintain its appeal of that decision. The Secretary's Motion to Dismiss (doc. 28) is GRANTED, and WildEarth Guardians' Petition for Review of Agency Action (doc. 1) is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(1). Each party shall bear its own fees and costs.

Dated: November 18, 2011              BY THE COURT:

                                       **/s/ John L. Kane**
                                       Senior U.S. District Court Judge

---

fact" for purposes of the standing analysis. A party's ability to secure judicial review should not hinge upon his access to a credit card and a computer.

[11] Because the injury in fact determination is dispositive, I decline to address whether WildEarth Guardians has sufficiently established causation and redressability.